Martin H. Egnash and Mary Egnash v. Commissioner.
Egnash v. Commissioner
Docket No. 47964.
United States Tax Court
T.C. Memo 1955-37; 1955 Tax Ct. Memo LEXIS 303; 14 T.C.M. (CCH) 126; T.C.M. (RIA) 55037; February 11, 1955
*303 Respondent determined deficiencies and penalties for fraud on the basis of a net worth computation of petitioners' income. Held, petitioners only reported approximately 22 per cent of their income in 1947 and 65 per cent in 1949.such understatements were due to fraud with intent to evade tax. Robert L. Taylor, Esq., Elsie Building, Lapeer, Mich., for the petitioners. Robert J. Fetterman, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties determined against petitioners, as follows: Additions to tax
Year
Deficiency
Section 293(b)
1947
$4,072.10
$2,036.05
1949
2,890.42
1,391.69
$6,962.52
$3,427.74
The issues to be decided are: (1) whether petitioners understated their income in their joint Federal income tax returns for the taxable years 1947 and 1949 by the amounts of $14,332.25 and $6,169.93, respectively, as determined by respondent; (2) if their income was understated in these years, was such understatement due to fraud with intent to evade the payment of taxes, thereby requiring the imposition of the 50 per cent penalty for fraud *304 pursuant to section 293 (b) of the Internal Revenue Code of 1939. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Martin H. Egnash (hereinafter referred to as petitioner) and Mary Egnash resided in Almont, Michigan, and filed joint Federal income tax returns for the years 1947, 1948, and 1949 with the collector of internal revenue for the district of Michigan. During the two years here in issue, namely, 1947 and 1949, petitioner was engaged in the operation of a tavern in Almont. He also operated two farms, one of which he owned and one which he rented. Petitioner engaged one Albert J. Armstrong to keep the books for his tavern and to prepare his various state and Federal tax returns. Armstrong resided in Port Huron, Michigan, and made entries in books which he kept for petitioner on the basis of information mailed to him monthly by petitioner. He recorded petitioner's tavern receipts from slips of paper which purportedly bore the daily totals appearing on petitioner's cash register. Entries for purchases and expenses were compiled from invoices which petitioner mailed to him. Armstrong *305 prepared petitioner's Federal income tax return on the basis of this and additional information furnished him during visits to petitioners' home, or petitioner's visits at his office. When such visits were made for the purpose of preparing petitioners' annual returns, petitioner would furnish Armstrong with various bills and records relating to his farm income. Depreciation schedules for buildings and machinery were prepared pursuant to information related orally by petitioner. Armstrong did not personally check on the existence of such buildings nor was he able to verify the amounts reported to him by petitioner as the gross receipts of his tavern. Various errors and inconsistencies were disclosed by an examination of petitioners' returns for the years 1947 and 1949, and a comparison of such returns with the ledger maintained by Armstrong. Thus, in the Schedule of Gains and Losses attached to the 1947 return, a gain of $950 resulting from a sale of a Pontiac car is listed; however, such gain is not included in income on page 2 of that return. In computing the income from the tavern in Schedule C of the 1949 return, a deduction of $1,266.09 was claimed for taxes. The only entry in *306 petitioner's ledger for taxes paid in connection with the tavern business, upon which a deduction could be based, is an entry in the amount of $119.70 for property tax. In the Schedule of Farm Income and Expenses attached to the 1949 return, a deduction of $135 was claimed for the depreciation of a $6,750 building supposedly acquired in June 1949. This building never existed. Petitioners reported net profits of $4,769.02 and $6,517.48 from the operation of the tavern in 1947 and 1949, respectively. Net losses from farming in the amounts of $2,945.06 and $2,785.95 were reported for 1947 and 1949, respectively. Set forth below is the adjusted gross income reported by petitioners for each of the years 1947 and 1949 and the net taxable income as determined by respondent on the basis of a net worth computation for each year, with allowances for stipulated adjustments made during the hearing: Income
Income
reported by
determined by
Year
Petitioners
Respondent
1947
$1,823.96
$16,156.21
1949
3,731.53
9,901.46
Respondent's net worth computations are based, in part, on net worth statements submitted by petitioner in connection with the settlement of his *307 income tax liabilities for the years 1944 through 1946. Petitioner has agreed to the accuracy of respondent's net worth computation for the years here in issue, except for certain specified items. The following condensation of respondent's adjusted net worth analysis sets forth in detail only the 4 items which remain in dispute: Net Worth and Cash Expenditures Analysis
12/31/46
12/31/47
12/31/48
12/31/49
(1) Baler
$ 2,566.00
(2) Cattle and Horses
$ 5,700.00
$ 5,700.00
5,700.00
(3) Automobile
2,107.99
2,107.99
2,107.99
Other Assets
$45,861.12
51,883.98
43,614.62
49,526.38
Total Assets
$45,861.12
$59,691.97
$51,422.61
$59,900.37
Less: Depreciation claimed, per returns
1,028.00
1,358.00
1,493.00
Net Total Assets
$45,861.12
$58,663.97
$50,064.61
$58,407.37
Liabilities
19,150.00
19,396.64
15,889.44
19,459.74
Net Worth
$26,711.12
$39,267.33
$34,175.17
$38,947.63
Less: Prior Year's Net Worth
26,711.12
39,267.33
34,175.17
Increase in Net Worth
$12,556.21
(5,092.16)
$ 4,772.46
(4) Plus: Living Expenses
$ 3,600.00
$ 3,600.00
$ 3,600.00
Income Tax Paid
380.00
1,529.00
Total: Taxable Income
$16,156.21
(1,112.16)
$ 9,901.46
Less: Income Reported
1,823.96
3,524.02
3,731.53
Understatement of Income
$14,332.25
$ 6,169.93
*308 (1) Baler - Petitioner acquired this machine on trial from a farm machinery dealer in 1949. He was dissatisfied with it and, when he tried to return it, the dealer asked him to find another customer for it. Petitioner sold the baler for the dealer in 1950 for $2,000. The check in payment for the baler was made out to petitioner. Petitioner cashed this check and turned the proceeds over to the machinery dealer. Petitioner owned the machinery dealer $4,286.25 on open account on December 31, 1949. Respondent determined that petitioner had purchased this machine in 1949 for $2,566 and that it was one of his assets at the close of that year. (2) Cattle and Horses - On December 31, 1946, petitioner possessed approximately 33 heifers, a team of work horses, and two riding horses, the total value of which amounted to $5,700 on that date. Petitioner reported a gross income of $3,734.84 from the sale of dairy products on his return for 1947. Respondent determined that petitioner had no cattle or horses at the end of 1946. (3) Automobile - On December 31, 1946, petitioner had a 1941 or 1942 Pontiac car which had cost him approximately $600. As hereinabove stated, petitioner listed a gain *309 on the sale of a 1941 Pontiac on a Schedule of Gains and Losses which was attached to his return for 1947. Respondent determined that petitioner had no automobile at the end of 1946. (4) Living Expenses - Petitioners lived in an apartment over the tavern. They obtained much of their food from the product of their farms. Six exemptions were claimed on their return for 1947 and five exemptions were claimed on their 1949 return. Deductions for contributions totaling $360 were claimed on their 1947 return. Petitioners' living expenses were approximately $2,000 for each of the years 1947 and 1949. Respondent determined that the living expenses were $3,600 for each year. Petitioners understated their income on their returns for the years 1947 and 1949 by the amounts of $6,432.25 and $2,003.93, respectively. Such understatements were due to fraud with intent to evade the payment of taxes. Opinion RICE, Judge: Petitioners have conceded the correctness of all but four of the items in respondent's net worth computations, thus admitting, even though they are given the benefit of such disputed items, that they reported only 24 per cent of their income on their return for 1947 and only *310 71 per cent on their return for 1949. We must decide whether respondent has treated these four items correctly in his net worth computations and whether any part of the deficiencies is due to fraud with intent to evade tax. The records maintained by petitioner for his tavern and farm businesses were incomeplete and inadequate. Moreover, they are inconsistent with deductions claimed by petitioners on their returns. Respondent properly resorted to the net worth method for the determination of petitioners' income for the years 1947 through 1949. Louis Halle, 7 T.C. 245 (1946), 175 Fed. (2d) 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950). While the uncontested items in respondent's net worth analysis disclose a substantial understatement of petitioners' income on their return for 1947, they also result in a determination that petitioners incurred a net loss of $1,112.16 in 1948, whereas they reported an income of $3,524.02 for that year and paid the tax thereon. However, petitioners have stipulated to the correctness of this net worth computation with the exception of four specific items and the year 1948 is not in issue. We must, therefore, confine *311 our decision to these four items and their effect upon the two taxable years before us. Referring first to the baler, which was included by respondent among petitioner's assets at December 31, 1949, it is petitioner's contention that he never purchased this item and, consequently, did not own it on that date. He testified that he merely had it on approval and that he acted as the agent of the farm machinery dealer when it was subsequently sold for $2,000. We are convinced that his testimony as to this item was truthful and that it was not one of his assets at the end of 1949. Respondent has failed to credit petitioner with the cattle and horses, and an automobile, which petitioner claims to have owned on December 31, 1946. Respondent's determination is based on the fact that a net worth statement as of December 31, 1946, which was submitted by petitioners as a basis for the settlement of their 1946 tax liabilities, contained no such items. This prior net worth statement appears to be the result of a compromise settling petitioner's tax liability for a year not in issue. We do not know the method by which the items or amounts appearing thereon were reached. Although entitled to *312 evidential weight, it is not conclusive as to petitioners' possession of these disputed items. Petitioner was engaged in the operation of two farms and reported income from the sale of dairy products on his return for 1947. It is obvious that he must have had some animals to produce this income. We have accordingly found as a fact that he possessed the various cattle and horses in issue on December 31, 1946. We are also convinced that he had an automobile on that date and have found its cost to be the $600 to which he testified. Petitioner testified that the family living expenses approximated $1,500 a year, but it is uncertain what items of expense and how many persons petitioner included in this estimate. On the basis of the very meager evidence in the record as to petitioners' standard of living, their contributions and medical expenses, the use of food produced on their farms, and the number of exemptions claimed for these years, we are not convinced that such expenses were the amounts testified to by petitioner and, doing the best we can with the evidence shown by the record, have found that they spent $2,000 per year for living expenses during the years here in issue. As *313 to the 50 per cent penalty for fraud, we cannot accept petitioners' contention that the understatements herein were due to inadvertence or negligence. Even after the concessions made by respondent and the adjustments which we have made in respondent's net worth computations, such computations disclose that petitioners only reported approximately 22 per cent of their income in 1947 and 65 per cent in 1949. The conclusion is inescapable that petitioner, with fraudulent intent, failed to disclose his total receipts to the individual who prepared the returns. The discrepancies between their income and the amounts reported are so large that it is unreasonable to believe petitioners were unaware of them. As was stated in Rogers v. Commissioner, 111 Fed. (2d) 987, 989 (C.A. 6, 1940): "* * * It is conceivable that taxpayers may make minor errors in their tax returns, or, owing to different or contradictory theories of tax computation, calculate returns which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse. Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly *314 evidence an intent to defraud the Government. The Board did not err in deciding that 50% penalties should be assessed." Respondent's determination of the penalty for fraud is accordingly sustained. Decision will be entered under Rule 50.